972 So.2d 207 (2007)
Corina CHRISTENSEN, Individually, etc., et al., Appellant,
v.
Everett C. COOPER, M.D., Coastal, etc., et al., Appellees.
Nos. 5D06-390, 5D06-874.
District Court of Appeal of Florida, Fifth District.
November 16, 2007.
Rehearing Denied January 14, 2008.
*208 John A. Shipley of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., and Edna L. Caruso, of Edna L. Caruso, P.A., West Palm Beach, for Appellants.
Henry W. Jewett, II, and Robert H. Peterson of Rissman, Barrett, Hurt, Donahue & McLain, Orlando, for Appellees.
TORPY, J.
In this medical malpractice action, Appellant, Corina Christensen, challenges the directed verdict in favor of Appellees, an emergency room doctor and his employer. The lower court concluded that Appellees' alleged omissions were governed by the Good Samaritan Act ("the Act") and that Appellant's expert's testimony failed to establish the requisite "reckless disregard" necessary to prove liability under the Act. Although we affirm the lower court's conclusion that the Act applies, we disagree with its conclusion that Appellant's expert's testimony was insufficient to present *209 a jury question and remand this cause for a new trial.
In 1998, the Christensens were riding a motorcycle when they were involved in a collision with a motor vehicle. They were transported by ambulance to Cape Canaveral Hospital. Appellee, Dr. Cooper, was the attending physician in the emergency room. Appellant recovered from her injuries. Mr. Christensen died at the hospital the day after the accident.
Appellant, individually and as personal representative of her husband's estate, filed a complaint against a number of defendants, including Dr. Cooper, and his employer, Coastal Physician Services of Orlando, Inc. According to the allegations in the third amended complaint, when Mr. Christensen was transported to the hospital, he was complaining of multiple extremity pain as well as abdominal and pelvic pain. He was also exhibiting signs and symptoms of a patient with internal bleeding. Mr. Christensen arrived at the hospital at approximately 11:00 p.m., but was not taken into surgery until 2:15 a.m. Dr. Matthew Lube performed the emergency surgery. During surgery, Dr. Lube discovered three to four liters of blood inside Mr. Christensen's abdominal cavity, along with a large amount of thrombus. He also discovered that Mr. Christensen had a fractured pelvis and grade five splenic laceration. The gist of Appellant's theory of liability against Dr. Cooper was that he failed to recognize the severity of Mr. Christensen's internal injuries and emergent need for surgery and failed to call for surgical evaluation in a timely manner.
By way of amendment to their answer, Appellees filed affirmative defenses to raise the immunity provisions of the Act, section 768.13, Florida Statutes (1998). In a partial summary judgment entered just prior to trial, the lower court determined that the Act applied because Dr. Cooper had treated Mr. Christensen under emergency conditions while Mr. Christensen was unstable. Based on that ruling, it was incumbent upon Appellant to prove that Dr. Cooper acted with "reckless disregard," as that phrase is defined by the Act. In recognition of this ostensibly higher burden, after ruling that the Act was applicable, the trial judge asked Appellant's counsel whether that ruling would impact her standard of care witness, Dr. Neimann. Appellant's counsel indicated that he had discussed this issue with the expert, who he anticipated would opine that Dr. Cooper's omissions amounted to a reckless disregard. He cautioned, however, that Dr. Neimann had not been asked this question in his prior depositions. To avoid any prejudice to the defense, the trial court permitted Appellees' counsel to depose Dr. Neimann again prior to his trial testimony. Although that trial commenced, it ended in a mistrial due to Hurricane Frances in September 2004.
Trial once again commenced the following year. Appellant called Dr. Neimann as her first witness. Dr. Neimann testified over two days, including direct, cross and redirect examinations. After Dr. Neimann's testimony, Appellees moved for a directed verdict. The court granted the motion. The court entered its final judgment in favor of Appellees, from which an appeal was taken. Thereafter, the lower court entered a separate judgment taxing costs, from which an appeal was taken. The two appeals were consolidated.
At the outset, we conclude that the lower court was correct in its determination that the Act applied. In making this determination, we reject Appellant's claim that disputed issues of fact on whether Mr. Christensen was "stable" precluded summary judgment. However, we disagree with the trial court's conclusion that Appellant's expert's testimony was insufficient *210 to present a jury question under the Act. The 1998 version of the Act, applicable here,[1] provides in pertinent part:
768.13. Good Samaritan Act; immunity from civil liability
(1) This act shall be known and cited as the "Good Samaritan Act."
(2). . . .
(b)1. Any hospital . . ., any employee of such hospital . . ., and any person licensed to practice medicine who in good faith renders medical care or treatment necessitated by a sudden, unexpected situation or occurrence resulting in a serious medical condition demanding immediate medical attention, for which the patient enters the hospital through its emergency room or trauma center, shall not be held liable for any civil damages as a result of such medical care or treatment unless such damages result from providing, or failing to provide, medical care or treatment under circumstances demonstrating a reckless disregard for the consequences so as to affect the life or health of another.
. . . .
3. For purposes of this paragraph, "reckless disregard" as it applies to a given health care provider rendering emergency medical services shall be such conduct which a health care provider knew or should have known, at the time such services were rendered, would be likely to result in injury so as to affect the life or health of another,. . . .
§ 768.13(1)-(2)(b), Fla. Stat. (1998) (emphasis added).
Our de novo review of the propriety of the directed verdict is focused on the sufficiency of Appellant's expert's testimony that the medical care given by Dr. Cooper amounted to a "reckless disregard for the consequences," which, because of the statutory definition of that phrase, turns on whether sufficient evidence was admitted that Dr. Cooper "should have known" that his acts or omissions "would be likely to result in injury" to Mr. Christensen. The parties agree that the Act is intended to establish the standard of care that applies to emergency room doctors for unstable patients. They disagree, however, whether the standard of care established by the Act is ordinary negligence or something more stringent. We think this debate is largely academic because, regardless of which legal label is attached, the issue we must resolve is whether the proof was sufficient under the Act, based on the language of the Act.
The essence of Dr. Neimann's opinion was that Dr. Cooper should have recognized that Mr. Christensen was bleeding internally and needed immediate surgical intervention. Employing the Act's definition for reckless disregard, he concluded that Dr. Cooper should have known that these omissions would likely result in injury to Mr. Christensen. During voir dire, counsel for Appellees asked Dr. Neimann questions regarding Dr. Neimann's interpretation of the meaning of "reckless disregard." In response to questions posited by defense counsel, Dr. Neimann opined that "reckless disregard," as defined by the statute, was, in his view, no different from the standard of care applicable in an ordinary medical negligence analysis. Seizing on this testimony, Appellees argued that Dr. Neimann had applied the wrong standard of care. The trial court agreed and granted the directed verdict.
On appeal, Appellees concede that Dr. Neimann said the "magic words." In other words, they concede that Dr. Neimann *211 stated his opinion using the language of the statute. Appellees also acknowledge that the evidence code permits this form of testimony by experts. They argue, however, that the voir dire and cross examinations revealed that the opinion was not supported by underlying facts or data and should be disregarded. We disagree because this testimony did not pertain to the facts or data upon which Dr. Neimann relied in reaching his conclusion. Rather, it focused on the doctor's opinion about the legal meaning of the Act, the inquiry about which was both irrelevant and outside the expertise of a medical expert. Whether the Act's standard is more similar to negligence or recklessness, as commonly defined, might be difficult to say, even for legal experts.[2] But the application of the definition is not complicated. The issue is whether Dr. Cooper should have known, based on all the relevant circumstances, that his failure to order immediate surgical intervention would likely result in injury to Mr. Christensen. While reasonable medical experts might disagree on the answer to this question, the application of this standard to a given set of facts is straight forward. Having read Dr. Neimann's testimony, it is clear that he understood and applied the correct standard, irrespective of whether he attached to it the correct legal label.
Having concluded that a new trial is required, we address one other point on appeal related to the cross-examination of Dr. Neimann. Appellees' counsel asked questions to highlight the fact that Dr. Neimann, although he was retained in April 2000, had never heard of the term "reckless disregard" and did not render an opinion that Dr. Cooper's conduct constituted reckless disregard until the first trial in September 2004. Appellant's counsel objected to several individual questions as being irrelevant and immaterial, but the trial court overruled the objections. We think this was an abuse of discretion. This line of questioning constituted improper impeachment and was, therefore, irrelevant. The suggestion was that Dr. Neimann was giving recently fabricated testimony or testimony that was inconsistent with his prior opinions. In fact, Dr. Neimann had not been asked to give an opinion applying the reckless disregard standard before the trial court ruled that the Act controlled. His trial testimony, therefore, was neither a recent fabrication nor inconsistent with prior testimony. Further, the questions were improper in form. Although Appellant could have rehabilitated Dr. Neimann by pointing out the actual facts and sequence of events, Appellant should not be forced to wade through irrelevancies to undo the confusion that might have resulted from this misleading line of cross-examination.
Finally, based on our disposition of the underlying judgment, the costs judgment is reversed.[3]
AFFIRMED in part; REVERSED in part, AND REMANDED.
ORFINGER and MONACO, JJ., concur.
NOTES
[1] The Act was amended in 2003. We reject Appellees' argument that the amendment was intended to "clarify" the prior version of the statute.
[2] The statutory definition of "reckless disregard" in the 1998 version of the Act is unconventional, but this is a phrase that is difficult to define, as evidenced by the definition contained in section 500 of the Restatement (Second) of Torts, which defines the phrase by contrasting it to negligence and concluding that it is "substantially greater than that which is necessary to make his conduct negligent."
[3] We have not overlooked Appellant's other point on appeal related to trauma scoring evidence, but conclude that no abuse of discretion has been shown on that point.